MICHAEL BAILEY
United States Attorney
District of Arizona
RYAN POWELL
Arizona State Bar No. 025695
Email: Ryan.Powell@usdoj.gov
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>vs.<br>Beau Shayne Yazzie,<br>Defendant. | No. CR-17-8095-PCT-GMS<br><br>**UNITED STATES' SENTENCING RECOMMENDATION** |

The United States recommends a sentence of 46 months' imprisonment, followed by 3 years of supervised release.

## I. Facts

On April 27, 2017, the defendant was at a residence on the Navajo Nation Indian Reservation where multiple people were drinking alcohol and using drugs. (PSR at ¶ 11.) He began to argue with a woman named T.M. (*Id.*) He stabbed her in the neck with a knife. (*Id.*) A man named R.J. intervened. (*Id.* at ¶ 12.) He put the defendant in a headlock and walked him outside. (*Id.* at ¶¶ 12-13.) There, the defendant stabbed R.J. to death. (*Id.* at ¶¶ 10, 12.)

The defendant fled and tried to destroy the murder weapon and the blood-soaked clothes he was wearing. The defendant went to his sister's house and asked if the "feds" had come by. She told him they had not. According to FBI reports, the defendant took off his clothes, which held the murder weapon in a jacket pocket and were covered in R.J.'s

blood; left them on the floor; and told his sister to burn them.[1] The defendant's sister did not burn the clothes. She put them in a plastic bag and turned them over to the FBI. The defendant was arrested later that day.

## II. Procedural History

The defendant was charged with two counts: Assault with a Dangerous Weapon for stabbing T.M., and Second Degree Murder for killing R.J. (Doc. 4.) The defendant pleaded guilty to Second Degree Murder. (Doc. 31.) The plea contained a stipulation that his sentence would not exceed the middle of the applicable guidelines range. (*Id.*)

Before sentencing, the United States objected to the PSR writer's failure to apply a 2-level increase to the defendant's offense level, pursuant to U.S.S.G. § 3C1.1, based on the defendant's attempt to destroy his bloody clothes and the murder weapon. (Doc. 35.) The defendant responded that the clothes and murder weapon were not material and that the enhancement therefore did not apply. (Doc. 42.) The defendant filed a separate objection to the PSR in which he contested the facts set forth in the PSR. (Doc. 43.) The defendant's objection asserted that the victims approached him holding knives and that he was defending himself.[2] (*Id.*)

At the sentencing hearing, the Court addressed the government's objection to the PSR. The parties argued consistently with their pleadings. The Court was not persuaded by the defendant's argument that the murder weapon and bloody clothes were not material evidence. The defense then took a different tack. The defendant's sister testified that the defendant did not tell her to burn the weapon and the clothes. This testimony contradicted the statements attributed to the sister in FBI reports. The United States did not have notice

---

[1] At the sentencing hearing on April 8, 2019, the defendant's sister testified that the defendant did not tell her to burn the clothes.

[2] The defendant has since withdrawn the portion of his objection that relates to victim T.M. (Doc. 69.)

of the sister's testimony; accordingly, the FBI agent who interviewed the defendant's sister was not available to testify. The Court discussed the weight of the evidence before it, and noted that it had sworn testimony on the defendant's side and an attorney's arguments based on hearsay in a report on the government's side. Based on this evidence, the Court found the government had not met its burden with respect to the enhancement. Accordingly, the Court overruled the government's objection. The final adjusted guidelines range was 168-210 months.

The Court then addressed the defendant's objections to the PSR. The Court noted that the defendant's objection undercut the factual basis in the plea agreement. The Court asked if the defendant wished to withdraw from the plea agreement. The defendant said he did not wish to withdraw from the plea and that he wanted to proceed with sentencing. The Court then asked if the defendant withdrew his objection to the PSR, and the defendant said he did not.

Because the defendant's objections to the PSR were inconsistent with the factual basis for Second Degree Murder, the Court rejected the plea agreement and set the case for trial.

**III. New Plea Offer**

The government began to prepare for trial and discovered that its ability to prove the charges beyond a reasonable doubt was significantly impacted. The government's key witness – the only eyewitness to the entire event – died. The surviving victim, T.M., was interviewed and appeared to be suffering from drug-induced and/or mental health issues that could be used by the defense to undermine her credibility.[3] Accordingly, the government's ability to meet its burden at trial, both affirmatively to prove its case and to prove the defendant did not act in reasonable self-defense, was weakened.

---

[3] These facts were disclosed to the defense before the defendant pleaded guilty.

As a result of these developments, the government offered the defendant the instant plea offer, which the defendant accepted. In light of the issues discussed above, the government believes the new plea offer to be in the interests of justice, as it guarantees a felony conviction and carries the possibility of a significant term of incarceration. The government asks the Court to accept the plea.

## IV. Sentencing Recommendation

The United States recommends a sentence of 46 months' incarceration, followed by 3 years of supervised release. This sentence is sufficient but not greater than necessary to comply with the statutory sentencing factors set forth at 18 U.S.C. §3553(a).

The PSR writer suggests a 9-level upward departure pursuant to U.S.S.G. § 5K2.21. (PSR at 17-19.) The plea agreement stipulates that the defendant's sentence "shall not exceed the high end of the applicable sentencing range under the U.S. Sentencing Guidelines, which range will be determined by the Court at sentencing." (Doc. 74 at ¶ 3.b.) The government's intent was to utilize the sentencing range established without application of an upward departures pursuant to § 4A1.3 or Chapter 5 of the U.S. Sentencing Guidelines. Accordingly, the United States believes the applicable guidelines range to be 37-46 months. The United States asks the Court to sentence the defendant to 46 months' incarceration, followed by 3 years of supervised release.

With respect to the § 3553(a) factors, the nature and circumstances of the offense are remarkably serious. The defendant stabbed T.M. in the neck, and stabbed R.J. to death. The defendant "has a history of violence" and "a history of offenses involving weapons." *Id.* at 20. This history includes a prior domestic violence conviction that involved a firearm, and arrests for Battery, Disorderly Conduct, Firing a Weapon, and Carrying a Weapon. *Id.* at ¶¶ 36, 41-75. The defendant's history and characteristics therefore establish the propriety of a high-end guidelines sentence. Additionally, this sentence promotes respect for the law and provides just punishment.

For these reasons, the United States asks the Court to sentence the defendant to 46 months in the Bureau of Prisons, followed by 3 years of supervised release.

Respectfully submitted this 3rd day of September, 2019.

MICHAEL BAILEY
United States Attorney
District of Arizona

*s/Ryan Powell*
RYAN POWELL
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants: Anthony Bingham, *Attorney for defendant*

*s/ Erica Lane*